685 A.2d 961

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
FRANKLIN CAMACHO, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued October 21, 1996—Decided December 12, 1996.

Before Judges HAVEY, BROCHIN and EICHEN.

*Timothy P. Reilly* argued the cause for appellant (*Mr. Reilly*, of counsel and on the brief).

*Linda Shashoua*, Special Assistant Deputy Attorney, Acting Assistant Prosecutor, argued the cause for respondent (*Lee A. Solomon*, Special Deputy Attorney General, Acting Camden County Prosecutor, attorney; *Kathleen M. Delaney*, Special Deputy Attorney General, Acting Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

HAVEY, P.J.A.D.

A person who has been convicted under *N.J.S.A.* 2C:39–4a of possession of a firearm with intent to use it against the person of another is subject to the mandatory provisions of the Graves Act. *N.J.S.A.* 2C:43–6c. In this case, the trial judge held that it was his function, as opposed to the jury's, to decide after a Graves Act hearing whether defendant's intention in possessing the firearm was to use it against the person, as opposed to the property, of another. We disagree, and accordingly reverse and remand for further proceedings.

Under a Camden County indictment defendant was charged with fourth-degree aggravated assault, *N.J.S.A.* 2C:12–1b(4), a

Graves Act offense. *See N.J.S.A.* 2C:43–6c. He was also charged with possession of a firearm with a purpose to use it unlawfully against the person or property of another. *N.J.S.A.* 2C:39–4a.

Prior to trial, defense counsel requested that a special interrogatory be presented to the jury for it to decide whether defendant's purpose in possessing the firearm was to use it against the person, as opposed to the property, of another. Counsel reasoned that since the Graves Act applied only to a person "convicted" of possessing the firearm with intention to use it against a person, the jury should decide the issue. The trial judge denied the request, holding that it was his function to decide that issue after a Graves Act hearing was conducted.

Defendant thereupon entered into a negotiated plea agreement to both charges. The parties agreed that in the event the trial judge determined that defendant's purpose was to use the firearm against the person of another, defendant would receive a seven-year custodial term with a three-year mandatory term pursuant to the Graves Act.

At the plea hearing, the trial judge reiterated his intention to decide whether defendant intended to use a firearm against the person of another. Defense counsel then explained that after discussing the trial judge's decision with defendant, defendant intended to enter guilty pleas to both offenses. However, counsel stated, "[defendant] indicated a desire to plead guilty to the proposed plea agreement. He understands the rights he's giving up. *We don't have waiver of appeal in this case due to the fact it's a somewhat unusual set of circumstances.*" (Emphasis added). Thereafter, the judge received a factual basis for the plea from the defendant. Defendant explained that while attending a party he turned on a stereo. After a woman turned the stereo off, defendant "got p____ed off" and shot the stereo and a wall with his handgun. He stated, "I never pointed the gun at nobody." Defendant then acknowledged that: (1) he was giving up his rights, including a right to a trial by jury; (2) he understood that he was exposed to a three-year mandatory term as a result of his

guilty plea; (3) he was satisfied with the representation of his attorney; and (4) he freely and knowingly answered all questions under the plea agreement.

At sentencing, the trial judge conducted a Graves Act hearing. *See N.J.S.A.* 2C:43–6d. Defendant again explained the incident involving use of his handgun. After the hearing, the trial judge found that defendant intended to use a firearm against the person of another, and thereupon sentenced defendant to a seven-year custodial term with a three-year period of parole ineligibility for the conviction under *N.J.S.A.* 2C:39–4a. A concurrent eighteen-month term with no parole ineligibility was imposed for the fourth-degree aggravated assault conviction. No immediate notice of appeal was filed by defendant.

Approximately thirteen months after sentencing, defendant moved for post-conviction relief (PCR). At the PCR hearing, defendant argued that he was deprived of his constitutional right to a jury trial on the issue of whether he intended to use a firearm against the person of another. He also claimed that his trial counsel was ineffective because she never explained to him his entitlement to a jury trial on the issue. The trial judge denied the PCR petition. He concluded first that the application was proce-durally barred because the issue could have been raised on direct appeal and had not, and second, he was satisfied that he had the power under the Criminal Code to decide the person/property issue, not the jury.

Thereafter, defendant filed an appeal from the order denying his PCR application. We also granted his motion to file an appeal *nunc pro tunc* from his judgment of conviction. On appeal, defendant raises the following points:

Point I—Defendant was denied his constitutional right to a fair trial when the trial court advised him that he did not have the right to a jury determination on the issue of whether the handgun was possessed with the intent [to] use it unlawfully against the person of another. *U.S. Const.* Amends. V, VI and XIV; *N.J. Const.* (1947) Art. I, pars. 1 and 10.

Point II—The plea agreement in the instant case should be vacated since the plea was not made with full knowledge of the consequences of the plea.

Point III—The plea agreement should be set aside since defendant did not provide an adequate factual basis to support his guilty plea.

We first address the State's argument that defendant waived any challenge to the trial judge's ruling concerning the person/property issue by pleading guilty to the weapons possession offense.

There is no question defendant fully understood that he was exposed to a mandatory term of three years under the Graves Act, and that the trial judge would determine whether the Graves Act applied. However, the record suggests that defendant consented to the procedure with the understanding that he was reserving the right to appeal from the judge's ruling. *See R.* 3:9-3(f). From the outset, defense counsel took exception to the trial judge's determination that he, and not the jury, would decide the person/property question. At the plea hearing, she explained the ruling to defendant and placed on the record, without objection by the prosecutor, that although defendant "understands the rights he's giving up ... [w]e don't have waiver of appeal in this case due to the fact it's a somewhat unusual set of circumstances."

Further, during the PCR hearing defendant's trial counsel testified that she and the assistant prosecutor who attended the plea hearing agreed that the judge's ruling was appealable, and that she had explained this fact to defendant. The State did not dispute counsel's testimony. Finally, in denying defendant's PCR application, the trial judge observed that defendant's challenge to the judge's person/property ruling was barred because it "could have been made on appeal[.]" *See R.* 3:22-3 and *R.* 3:22-4.[1] We therefore deem defendant's plea as a conditional plea under *R.* 3:9-3(f), which permits a defendant, with the approval of the court and the consent of the prosecutor, to enter a guilty plea reserving on the record the right to appeal from the adverse determination of any specified pretrial motion. Although there is no express "approval" of the court or "consent" of the prosecuting attorney,

---

[1] As of the time of the PCR application, defendant had not yet filed an appeal. However, as stated, we later granted his motion to file an appeal *nunc pro tunc* on July 27, 1995.

we believe there was tacit approval and consent evident in the record as a whole. *See State v. Matos,* 273 *N.J.Super.* 6, 15, 640 *A.*2d 1176 (App.Div.1994). We therefore reach the merits of defendant's argument.

As originally enacted, *L.* 1981, *c.* 31, the Graves Act provided for a mandatory term for the commission of enumerated crimes, including the weapons possession offense under *N.J.S.A.* 2C:39–4a. For Graves Act purposes, it made no difference whether, under *N.J.S.A.* 2C:39–4a, defendant's purpose in possessing the firearm was to use it against a person or property.

The Graves Act was amended in 1982, *L.* 1982, *c.* 119, § 1. The amendment made convictions under *N.J.S.A.* 2C:39–4a applicable to the Graves Act only when the actor possessed a firearm with intent to use it against the *person* of another. *See* Cannel, *New Jersey Criminal Code Annotated,* Comment 4 on *N.J.S.A.* 2C:43–6 (1997). The amendment was "passed to avoid harsh treatment of persons who merely use a firearm against property." *Ibid.; see also State v. Des Marets,* 92 *N.J.* 62, 79 n. 16, 455 *A.*2d 1074 (1983). This is evident from the comments to the Bill which led to the enactment of *L.* 1982, *c.* 119:

> The purpose of the language being eliminated by the amendment *was to remove from the scope of the mandatory sentencing law* those persons who had not committed crimes of violence against persons. *It appears, however, that this purpose can be accomplished more clearly and simply by limiting application of the law in cases of violation of [N.J.S.A.] 2C:39–4a to violations involving possession of a firearm with the intention of using it against another person.* [Senate Law, Public Safety & Defense Comm., *Statement to Senate Bill No. 1370* (emphasis added).]

■ As a consequence of the 1982 amendment, we concluded in *State v. Latimore,* 197 *N.J.Super.* 197, 221, 484 *A.*2d 702 (App.Div. 1984), *certif. denied,* 101 *N.J.* 328, 501 *A.*2d 978 (1985), that:

> it now appears that to impose an extended term under *N.J.S.A.* 2C:43–6c it will be necessary to obtain, by special interrogatory, a finding by the jury as to whether or not a conviction under *N.J.S.A.* 2C:39–4a is for possession of a firearm with intent to use it unlawfully against either the person or property of another, or both.

Implicit in our observation is that if the *jury* finds that the defendant merely intended to use the firearm against property, the mandatory features of the Graves Act are inapplicable. *Lati-*

*more's* conclusion is consistent with the clear language of the 1982 amendment making the Graves Act applicable only to "[a] person who has been *convicted* under [*N.J.S.A.*] 2C:39–4a. of possession of a firearm with intent to use it against the person of another[.]" *N.J.S.A.* 2C:43–6c (emphasis added). In our view, *Latimore* is dispositive here. Defendant was entitled to have a jury decide the issue.

The trial judge declined to follow *Latimore*, concluding that, "I'll make my own independent determination as to whether [defendant] possessed the firearm with a purpose to use [it] unlawfully against the person of another as opposed to against the property of another." The judge was of the view that the *Latimore* court may not have "thought out" the fact that our Supreme Court had held in *State v. Stewart*, 96 *N.J.* 596, 605–06, 477 *A.*2d 300 (1984), just four months earlier, that it is the function of the trial judge, not a jury, to decide whether the Graves Act applies when defendant is convicted of one of the enumerated offenses under *N.J.S.A.* 2C:43–6c.

In *Stewart*, defendant was convicted of second-degree (unarmed) robbery but acquitted of armed robbery, conspiracy to commit robbery and weapons possession charges. 96 *N.J.* at 600, 477 *A.*2d 300. Nevertheless, the jury, by answer to a special interrogatory, determined that defendant used or was in possession of a firearm during the commission of the robbery, including the immediate flight therefrom. *Ibid.* Based on this finding by the jury, the trial judge imposed a three-year parole ineligibility period under the Graves Act. *Id.* at 600–01, 477 *A.*2d 300. Defendant argued that, because of the apparent inconsistencies in the jury verdicts, "there [was] no way of knowing whether the jury made factual findings sufficient to support application of the Graves Act." *Id.* at 606, 477 *A.*2d 300.

The Court in *Stewart* rejected defendant's argument, holding that "[t]he jury's finding was an improper ground for applying the Graves Act." *Ibid.* Determination of whether the Graves Act applies "must be made by the judge," applying the preponderance of the evidence standard, who "is free to consider all relevant

material, not merely that admissible at trial or considered by the jury." *Ibid.*

However, *Stewart* was focusing on the trial judge's role *after* defendant has been convicted of one of the enumerated offenses under *N.J.S.A.* 2C:43–6c. To understand the parameters of a Graves Act hearing, as defined by *Stewart,* the distinction between a conviction under *N.J.S.A.* 2C:39–4a for possession of a firearm with a purpose to use it against the person of another and the remaining offenses enumerated under *N.J.S.A.* 2C:43–6c is significant. To convict for possession with a purpose to use a firearm against the person of another, a jury must find that: (1) the object possessed was a firearm; (2) defendant "possessed" it; (3) defendant's purpose was to use it against the person of another; and (4) he intended to use it in a manner that was proscribed by law. *State v. Harmon,* 104 *N.J.* 189, 212, 516 *A.*2d 1047 (1986); *State v. Jenkins,* 234 *N.J.Super.* 311, 315, 560 *A.*2d 1240 (App.Div.1989). Upon conviction, "[n]o more is required for a Graves Act offense to occur, neither murder, manslaughter, aggravated assault nor any of the other offenses thereafter listed [under *N.J.S.A.* 2C:43–6c]." *Des Marets, supra,* 92 *N.J.* at 69, 455 *A.*2d 1074. In other words, if defendant is convicted of possession of a firearm with intent to use it against the person of another, no Graves Act hearing is necessary in order to trigger the mandatory provisions of the Act. It follows, however, that if defendant is convicted only of possession with intent to use the firearm against the property of another, the Graves Act does not apply at all and there is no need for a Graves Act hearing.[2]

*Stewart* focused on the conviction of one of the enumerated offenses under *N.J.S.A.* 2C:43–6c, such as robbery, *see Stewart, supra,* 96 *N.J.* at 600, 477 *A.*2d 300, or burglary, *see Des Marets,* 92 *N.J.* at 66, 455 *A.*2d 1074, where use or possession of a firearm was the issue. In such a case a Graves Act hearing is necessary

---

[2] Of course, if defendant is acquitted of the *N.J.S.A.* 2C:39–4a offense, but is convicted of another crime enumerated under *N.J.S.A.* 2C:43–6c, he may still be subject to the Graves Act if he possessed a firearm during the commission of that

to determine whether defendant possessed a firearm during the commission of the offense, including the immediate flight therefrom. *N.J.S.A.* 2C:43–6c. Upon a conviction for one of these enumerated offenses, "possession" of a firearm is required, and no more. *Des Marets, supra,* 92 *N.J.* at 68–69, 455 *A.*2d 1074. Under the Act, the " 'actor's state of mind was meant to be irrelevant. . . .' " *Stewart, supra,* 96 *N.J.* at 602, 477 *A.*2d 300 (quoting *Des Marets, supra,* 92 *N.J.* at 69, 455 *A.*2d 1074). Thus, at a Graves Act hearing, the judge focuses on two discrete issues: (1) did defendant use or possess a weapon; and (2) was the weapon a firearm as defined by the Criminal Code? *Stewart, supra,* 96 *N.J.* at 605–06, 477 *A.*2d 300; *see also N.J.S.A.* 2C:43–6d (at a Graves Act hearing, the prosecutor shall establish that "the weapon used or possessed was a firearm"). In *Stewart,* for example, the question, answered by the Court in the affirmative, was whether "constructive possession" of a weapon that defendant is able to convert practically immediately to actual possession, is sufficient to trigger the mandatory provisions of the Graves Act. 96 *N.J.* at 602–04, 477 *A.*2d 300.

The trial judge's reliance on *Stewart* here was therefore misplaced for two reasons. First, expanding the judge's role at a Graves Act hearing to explore defendant's state of mind in possessing the firearm runs counter to *Stewart's* holding that " 'the actor's state of mind was meant to be irrelevant' " for purposes of the Graves Act. *Stewart, supra,* 96 *N.J.* at 602, 477 *A.*2d 300 (quoting *Des Marets, supra,* 92 *N.J.* at 69, 455 *A.*2d 1074).

Second, as we have stated, if defendant is "convicted" of possession of a firearm for the purpose of using it against the person of another, there is no need for a Graves Act hearing. However, in order for the defendant to be "convicted" of the offense, a jury must be convinced beyond a reasonable doubt that defendant's

---

enumerated crime. *See State v. Palmer,* 211 *N.J.Super.* 349, 353–54, 511 *A.*2d 1212 (App.Div.1986) ("[t]he jury could have concluded that defendant possessed the firearm yet not have been convinced beyond a reasonable doubt that he possessed it with the purpose to use it unlawfully against another").

purpose was to use the firearm against the person of another, and must so find by the State's introduction of competent proofs during a trial. *See Palmer, supra,* 211 *N.J.Super.* at 354, 511 *A.*2d 1212 ("a jury *conviction* requires proof beyond a reasonable doubt, *N.J.S.A.* 2C:1–13a, whereas the Graves Act merely requires that the evidence preponderate in favor of applicability. *N.J.S.A.* 2C:43–6d") (emphasis added).

If, as the trial judge held, the issue is to be resolved by the judge after a Graves Act hearing, the State would need only establish that purpose by a preponderance of the evidence, and the sentencing judge would "take judicial notice of any evidence, testimony or information adduced at the trial, plea hearing, or other court proceedings and [would] also consider the presentence report and any other relevant information." *N.J.S.A.* 2C:43–6d. Such a hearing would intrude upon the defendant's right to trial by jury on the element of intent.

Reversed and remanded to permit defendant to vacate his plea and proceed to trial.